UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Index No.:
SANDY ESTERIL,

              Plaintiff,                                   **COMPLAINT**

   -against-

ATRIUM MEDICAL, P.C., individually, and SHILPA       Plaintiff Demands
PARADKAR SINGH, M.D., individually,                   a Trial By Jury

              Defendants.
-------------------------------------------------------------------X

Plaintiff, Sandy Esteril, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the New York Labor Law § 740 ("NYLL § 740) and the Administrative Code of the City of New York ("NYCHRL"), for whistleblower retaliation and interference with a protected right, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries she has suffered because she disclosed to a supervisor an activity, policy, or practice that she reasonably believed is a violation of law, rule, or regulation, together with unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to § 1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

3. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff is a Black female resident of the State of New Jersey, County of Union.

5. At all times material, Defendant ATRIUM MEDICAL, P.C. ("ATRIUM") was and is a domestic professional corporation duly incorporated under the laws of the State of New York.

6. At all times material, Defendant ATRIUM was and is authorized to conduct business in the State of New York and does conduct business in the State of New York.

7. At all times material, Defendant ATRIUM was and is an outpatient primary care medical practice located at 160 E. 56th Street, 12th Floor, New York, NY 10022.

8. At all times material, Defendant SHILPA PARADKAR SINGH, M.D. ("DR. SINGH") is a resident of the State of New York, County of New York.

9. At all times material, Defendant DR. SINGH was and is the owner of Defendant ATRIUM.

10. Defendant ATRIUM and Defendant DR. SINGH are collectively referred to as Defendants.

11. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

12. In or around May 2018, President and Board Director, Defendant DR. SINGH, and Treasurer/Secretary and Board Director, Dr. Julie Bikhman, formed Defendant ATRIUM.

13. On or about May 7, 2018, Plaintiff began working for Defendant ATRIUM as a Practice Manager.

14. In that role, Plaintiff's responsibilities included processing provider credentials, maintaining office and medical supplies, inputting payroll and benefits, processing insurance claims, and managing patient revenue cycles.

15. On or about September 7, 2018, Defendant DR. SINGH and Dr. Julie Bikhman, entered into a partnership agreement ("Shareholders' Agreement"), within which stated that Defendant DR. SINGH and Dr. Bikhman each owned half of the practice.

16. Plaintiff, Defendant DR. SINGH, and Dr. Bikhman all left a previous practice to open Defendant ATRIUM.

17. Plaintiff was initially excited to work with Defendant DR. SINGH and Dr. Bikhman at Defendant ATRIUM. However, from 2018 until her termination, Defendant DR. SINGH pressured Plaintiff to engage in a series of unethical acts, including defrauding United Health Care by adding non-employees to Defendant ATRIUM's health insurance plan, creating secret company bank accounts and lines of credit while hiding it from Dr. Bikhman, and sending Defendant DR. SINGH company funds from the bank account for her own personal use.

18. For example, most recently, in or around September 2023, Defendant DR. SINGH opened a Chase Bank account ("Chase account") for Defendant ATRIUM, and made herself the administrator/owner, but did not notify or add Dr. Bikhman as an authorized user.

19. Around that same time, Defendant DR. SINGH told Plaintiff that she had opened a line of credit for $180,000 under the Chase account to be used for "business purposes," but again did not disclose this to Dr. Bikhman. Instead, Defendant DR. SINGH started to wire herself money from the line of credit to her own personal bank account.

20. On or about November 29, 2023, Plaintiff confronted Defendant DR. SINGH about funneling money to herself because Plaintiff wanted to be fully transparent with Dr. Bikhman. Plaintiff added that she was **concerned of legal implications** in hiding wire transfers from Dr. Bikhman, and did not want Dr. Bikhman to think anything "shady" was taking place.

21. Defendant DR. SINGH then told Plaintiff, "The $180,000 line of credit will be a buffer-emergency trust fund. If we ever need any money, if we fall short with payroll or rent, we can use it as a buffer."

22. However, this was false, because Defendant DR. SINGH continued to wire herself money from the line of credit.

23. Then, in or around January 2024, Defendant DR. SINGH told Plaintiff that she added *Plaintiff* to Defendant ATRIUM's Chase account, but would *not* add *Dr. Bikhman*.

24. Plaintiff felt uncomfortable that Dr. Bikhman's name was not on the Chase account, and asked Defendant DR. SINGH, "Why are you not adding Dr. Bikhman to the [Chase account] if she's your partner?" Defendant DR. SINGH replied, "**Why do I need to add [Dr. Bikhman]? She doesn't act like a partner**."

25. Nevertheless, at the beginning of every year, Plaintiff was responsible for paying certain vendors through Defendant ATRIUM's bank account. To create the impression that the Chase account was created for "business purposes," and not for personal benefit, Defendant DR. SINGH instructed Plaintiff to pay those vendors with the Chase account.

26. However, in doing so, Plaintiff noticed that Defendant DR. SINGH had wired at least $100,000 of the $180,000 line of credit to her personal account, depleting the credit.

27. Then, as Plaintiff was recently added to the Chase account, Defendant DR. SINGH asked her to send her (Defendant DR. SINGH) another $15,000 for "personal use." When Plaintiff replied, "**You've been wiring yourself, why are you asking for more money?**" Defendant DR. SINGH responded, "**Yeah, well I need to pay tuition**."

28. In reality, Defendant DR. SINGH sought to have Plaintiff do the "dirty work" so that Defendant DR. SINGH could be one-step removed from her own fraudulent misconduct.

4

29. Nevertheless, Plaintiff, feeling uncomfortable, but not wanting to risk her job, complied and wired Defendant DR. SINGH the money.

30. In or around June 2024, the Internal Revenue Service ("IRS") refunded Defendant ATRIUM $150,000 for an employee tax credit for which Defendant DR. SINGH had applied during the COVID-19 pandemic. Defendant DR. SINGH immediately instructed Plaintiff to have that refund deposited into the Chase account and to wire Defendant DR. SINGH's personal account with $90,000 of that tax credit.

31. In or around July 2024, Plaintiff again asked Defendant DR. SINGH to put Dr. Bikhman's name on the Chase account, and requested to have a copy of the Shareholders' Agreement. Defendant DR. SINGH ignored Plaintiff's request regarding Dr. Bikhman and replied, "I don't have [the Shareholders' Agreement]. Ask [Dr. Bikhman]."

32. In or around the beginning of August 2024, Plaintiff overheard Defendant DR. SINGH tell Dr. Bikhman that Plaintiff was not paying her. Plaintiff then approached Defendant DR. SINGH and asked, "**Why do you keep telling Dr. Bikhman you are not getting paid when I wired you close to a million dollars?**"

33. On August 5, 2024, Plaintiff emailed Defendant DR. SINGH with Dr. Bikhman copied:

> "I would like to have full transparency going forward and my request. [Defendant DR. SINGH], please have the accountant draw up the total monies given to you YTD, **which should include monies I wired since inception including from SBA loans, Earned Income tax credit refund, the business line of credit, any tax refund if [Defendant ATRIUM] ever received**. Also, please call Chase and ask for [Dr. Bikhman] to have full access to the Chase account. **What does the partnership agreement state when it comes to the company monies, both partners and hours requirements, shares, etc.** [Defendant DR. SINGH] earlier this year I asked you and [Mr. Singh] for a copy and never got it. If any money transferred to a partner(s) to avoid any conflict of interest or you stating, you're not getting paid[,] **both partners should be in agreement before any monies are wired out**." (Emphasis added).

34. Later that month, Dr. Bikhman was finally added to the Chase account and Plaintiff received a copy of the Shareholders' Agreement, which required approval from *both* Defendant DR. SINGH and Dr. Bikhman in order to facilitate financial transactions involving the practice.

35. Then, on September 10, 2024, after a dispute between Plaintiff and Defendant DR. SINGH about Defendant ATRIUM renting one of its rooms to another practice, Plaintiff emailed Defendant DR. SINGH:

> "For the record: **This is starting to feel like** . . . **I'm being falsely accused of something I did not do, act or say**. I guess because I'm black it's an automatic oh she was screaming, yelling, angry act . . . [Dr. Bikhman] told me you're accusing me of a screaming match that never happened. We had a conversation, you didn't like my open and honest opinion and **now I'm the angry screaming black woman**. . . Telling you need to work more hours so we can crawl out of this huge debt . . . **asking for [Dr. Bikhman] to be added to [Defendant ATRIUM's] account going forward since any money coming out the account both parties need to be aware of, which is written in the 10-year agreement you signed**." (Emphasis added).

36. On or about February 17, 2025, without Dr. Bikhman's knowledge, Defendant DR. SINGH instructed Plaintiff to not pay her, or Dr. Bikhman, and to instead prioritize paying Defendant ATRIUM's rent, payroll, and vendors. Plaintiff was also instructed to send a letter to Defendant ATRIUM's landlord explaining why the rent had not been paid.

37. However, on March 6, 2025, Plaintiff emailed Defendant DR. SINGH to expose the current financial state of Defendant ATRIUM, and stated that the line of credit was maxed out and the landlord was owed $90,000.

38. Following that March 6, 2025 email, Defendant DR. SINGH accused Plaintiff of mismanaging payroll and overpaying Dr. Bikhman, and began to micromanage Plaintiff's compensation to Dr. Bikhman, including having her manage Dr. Bikhman's PTO, which was a topic previously discussed between the partners.

39. Defendant DR. SINGH's actions were intended to create a pretextual paper trail to force Plaintiff to quit or to justify her eventual termination.

40. On or about March 10, 2025, Defendant DR. SINGH instructed Plaintiff to not pay rent and to let Dr. Bikhman handle the landlord, since she was "a partner."

41. Ultimately, Plaintiff became concerned about Defendant DR. SINGH's directives. Thus, on March 11, 2025, Plaintiff emailed Defendant DR. SINGH and Dr. Bikhman:

> "I see the writing on the wall . . . Anything or anytime I have spoken to [Dr. Bikhman] when it comes to partnership, business, or PTO etc… was under [your] order. . . **but now I see retaliatory behavior now from you** since I'm not following your precise direct orders. **Following your email dated 2/17/25 you instructed me not to pay you and [Dr. Bikhman] in the coming weeks and months, but [Dr. Bikhman] wasn't CC['d] in that email**. . . In December 2023[,] while I was on vacation[,] **you opened up a company line of credit under** [Defendant ATRIUM] and told me this was to be used to pay for rent, payroll, vendors, etc.. a buffer. . . In a matter of a couple of days[,] the money hit the new Chase account at the time [it] did not have [Dr. Bikhman's] name on it[,] **you wired majority of line of credit to yourself. Upon my return from vacation, you asked me to wire you more money. Like I do when you say so i.e. SBA Loan, Employer Tax credit refund etc**… Since the majority of the line of credit monies went to you directly[,] the landlord situation could have [] all been avoided for 2024. . . **I'm at a los[s] when you decided when [Dr. Bikhman] should be involved/not**. . . **I must follow your orders blindly instead of looking out for the best interest of [Defendant ATRIUM]**." (Emphasis added).

42. Then, on March 21, 2025, Plaintiff emailed Defendant DR. SINGH and Dr. Bikhman:

> "For the record[,] **[Defendant DR. SINGH] had no qualms, problems[,] or questions when they told me to commit insurance fraud** . . . by adding [Sierra Mosny] to [Defendant ATRIUM's] company insurance until she gave birth or [her husband] could find medical coverage. . . **I had to omit certain correspondence, reports, and email exchanges from [Dr. Bikhman] under [Mr. Singh's] instructions**. . . **Is it part of my job description to commit insurance fraud?** I always did and acted on what I was told." (Emphasis added).

7

43. Finally, on or about March 28, 2025, during a follow-up meeting after Plaintiff's complaint, Defendant DR. SINGH terminated Plaintiff due to an elimination of her position, in addition to future legal expenses in anticipation of potential litigation with Dr. Bikhman.[1]

44. However, this was pretext, because Defendants hired someone for the same position, with a different title, less than two weeks later.

45. In reality, Defendants terminated Plaintiff because she objected to and exposed its unlawful business practices.

**Post-Termination Retaliation**

46. On July 15, 2025, Plaintiff's counsel sent Defendant DR. SINGH a preservation claim letter asserting the claims alleged herein.

47. On July 25, 2025, in further retaliation, Defendant DR. SINGH filed an Affirmation in an unrelated legal dispute involving herself and Dr. Bikhman, and in which Plaintiff is not a party.

48. Nevertheless, in that publicly filed Affirmation, Defendant DR. SINGH attacked Plaintiff's character with false allegations harming her reputation.

49. For example, some and such accusations included that Plaintiff solicited and stole Defendant ATRIUM's confidential and proprietary information, and that Plaintiff wiped her company-issued laptop upon its return. However, these were patently false.

50. In reality, Defendant DR. SINGH weaponized the court system to publicly shame and display her animus towards Plaintiff for daring to challenge Defendant ATRIUM's unlawful behavior.

51. Given that Plaintiff is not a party to the lawsuit between Defendant DR. SINGH and Dr. Bikhman, and that the Affirmation was not filed until after Plaintiff presented her claim letter,

---

[1] On April 3, 2025, Dr. Bikhman filed a complaint against Defendant DR. SINGH, her husband Manoneet Singh, and Defendant ATRIUM, in New York Supreme Court Nassau County, alleging, *inter alia*, breach of contract, breach of fiduciary duty, conspiracy to misappropriate corporate funds and misappropriation of corporate funds, conspiracy to commit fraud, and fraud.

Defendant DR. SINGH's false tarnishing of Plaintiff's reputation was further retaliation against Plaintiff.

52. Defendants' actions were intended to interfere with Plaintiff's protected rights to pursue wrongful termination claims in court.

53. As a result of the acts and conduct complained about herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails.

54. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she has suffered and continues to suffer severe emotional distress and physical ailments.

56. As a result of the acts and conduct complained of herein, Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

58. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

**AS A FIRST CAUSE OF ACTION**
**UNDER THE NEW YORK LABOR LAW**
**NYLL RETALIATION**

59. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

60. New York Labor Law § 740 states, in pertinent part,

> 2. Prohibitions. An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:
>
> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;
> (b) …
> (c) objects to, or refuses to participate in any such activity, policy or practice.

61. Defendants engaged in an unlawful employment practice by retaliating against Plaintiff because she reported and objected to Defendants' unlawful hiring practice.

## AS A SECOND CAUSE OF ACTION
## UNDER THE NYCHRL
## **INTERFERENCE WITH A PROTECTED RIGHT**

62. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

63. The Administrative Code of the City of New York § 8-107(19) provides:

> It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

64. Defendants violated the section cited herein as set forth.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that the Defendants engaged in an unlawful employment practice prohibited by the NYLL § 740 and the NYCHRL by engaging in unlawful whistleblower retaliation, together with interference with a protected right and unlawful termination;

B. Awarding damages to Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relied as the Court deems just and proper.

Dated: October 2, 2025
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　**PHILLIPS & ASSOCIATES, PLLC**
　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

　　　　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　　　　Jesse S. Weinstein, Esq.
　　　　　　　　　　　　　　　　　45 Broadway, 28th Floor
　　　　　　　　　　　　　　　　　New York, NY 10006
　　　　　　　　　　　　　　　　　(212)-248-7431